IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA,

vs.                                     Case Nos.:     1:15cr9/AW/GRJ
                                                       1:17cv119/AW/GRJ

TAWANDA LAKAYE BURKETT

---

## ORDER, REPORT AND RECOMMENDATION

This matter is before the court upon Petitioner Tawanda Lakaye
Burkett's "Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct
Sentence by a Person in Federal Custody."   (ECF No. 226.)   The
Government has filed a response (ECF No. 234) and Burkett has filed a
reply.   (ECF No. 238.)   Burkett has also filed an Amended Motion to
Vacate, Set Aside or Correct Sentence, a Motion for Appointment of
Counsel and Evidentiary Hearing, and a Motion to Seal the Motion to
Amend.   (ECF Nos. 289-291.)   The case was referred to the undersigned
for the issuance of all preliminary orders and any recommendations to the
district court regarding dispositive matters.   *See* N.D. Fla. Loc. R. 72.2;
*see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).   After a review of
the record and the arguments presented, the court concludes that Burkett's

motion, as amended, should be denied without an evidentiary hearing.

*See* Rules 8(a) and (b) Governing Section 2255 Cases.

## I.    BACKGROUND

On May 26, 2015, a grand jury returned a four-count indictment charging Petitioner Tawanda Lakaye Burkett ("Burkett") and two co-defendants for crimes based on their participation in a scheme to make money using a minor female to perform sex acts.    (ECF No. 1.)    The minor victims were advertised on a social media site, Backpage.com, and because neither of Burkett's two co-defendants possessed valid driver's licenses, Burkett would transport the victims and co-defendants to various locations where the victims engaged in sexual activity with the clients.    (ECF No. 168, PSR ¶¶ 15-18.)    Burkett was paid between $40.00 and $50.00 per ride for her services.    (*Id.* at ¶ 18.)

Burkett, who was initially represented by Assistant Federal Public Defender Darren James Johnson, was ordered detained pending trial. (ECF Nos. 17, 23.)    On June 23, 2015, the grand jury returned a four-count superseding indictment.[1]    Burkett was charged with: (1) Sex Trafficking of a

---

[1] The superseding indictment corrected scrivener's errors in the statutory citations in Counts Two and Four.

Case Nos.: 1:15cr9/AW/GRJ; 1:17cv119/AW/GRJ

Minor, in violation of 18 U.S.C., §§ 1591(a)(1) and (b)(2) and 2 ("Count One");

and (2) Financially Benefitting from Sex Trafficking of a Minor, in violation of

18 U.S.C. §§ 1591(a)(2) and (b)(2) and 2 ("Count Two").   *Id.*

On August 21, 2015, Mr. Johnson moved to withdraw based on his

client's dissatisfaction with him.   (ECF No. 47.)   Attorney Daniel Francis

Daly was appointed to replace him.   (ECF No. 48.)

The case proceeded to trial before Senior District Judge Paul C. Huck.

(ECF Nos.118, 119, 122, 124.)   On the third day of trial, the jury deliberated

less than thirty minutes before returning a guilty verdict on both counts.

(ECF Nos. 124, 125.)

The second final Presentence Investigation Report ("PSR") calculated

Burkett's total offense level as 34.   (ECF No. 176, PSR ¶¶ 26-35.)   She

had a base offense level of 30, and two two-level adjustments because the

offense involved the use of a computer and because the offense involved

commission of a sexual act.   (*Id.* at ¶¶ 26-28.)   Her criminal history

category was II.   The applicable advisory guidelines range was 168 to 210

months. (*Id*. at ¶ 120.)   Burkett's offenses each carried a statutory minimum

term of ten years of imprisonment with a maximum of life.   (*Id.* at 119.)[2]
The defense filed multiple objections which remained unresolved prior to
sentencing.   (*Id.* at pp. 31-32.)

At sentencing, the court sustained the objection to the lack of minor
role reduction, which reduced Burkett's guideline range to 135 to 168
months.   (ECF No. 198 at 4-6.)   The parties provided, for the court's
consideration, a copy of a psychological/intellectual evaluation the public
defender's office had requested prior to trial.   (*Id.* at 18-19.)   The court
sentenced Burkett below the applicable guidelines range to concurrent terms
of 120 months on each count, the minimum it could legally impose.   (ECF
Nos. 179, 180, 198.)

Burkett appealed her conviction, arguing that the district court abused
its discretion by permitting the testimony of government witness Rachel
Andres, because the testimony was not credible.   (ECF No. 225.)   The
Eleventh Circuit conducted a de novo review of the evidence and found the
jury reasonably could have found guilt beyond a reasonable doubt based on
the evidence at trial, including Ms. Andres' testimony.   (*Id*. at 4.)

---

[2] Paragraphs 11, 12, and 13 of the PSR, including the reference in Paragraph 11 to a
fifteen-year statutory mandatory minimum, appear to have been included in error.

Case Nos.: 1:15cr9/AW/GRJ; 1:17cv119/AW/GRJ

Burkett timely filed her § 2255 motion shortly after the Eleventh Circuit rendered its decision.   On the motion itself, she raises four grounds for relief, but the attachment alleges twelve separate grounds.   These grounds, as well as issues raised for the first time in her reply and in her motion to amend will be addressed in turn.   The Government opposes the motion.

## II.   ANALYSIS

### A. <u>Standard of Review</u>

"Section 2255 does not provide a remedy for every alleged error in conviction and sentencing."   *Spencer v. United States*, 773 F. 3d 1132, 1138 (11th Cir. 2014).   Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to section 2255 are extremely limited.   A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.   *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).   "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow

compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"   *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal.   *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014); *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994).   Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255.   *Nyhuis*, 211 F.3d at 1343 (quotation omitted).   Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised.   *Sanders v. United States*, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by

different factual allegations . . . or supported by different legal arguments . .

. or couched in different language . . . or vary in immaterial respects").

Because a motion to vacate under section 2255 is not a substitute for

direct appeal, issues which could have been raised on direct appeal are

generally not actionable in a section 2255 motion and will be considered

procedurally barred.   *Lynn*, 365 F.3d at 1234–35; *Bousley v. United*

*States*, 523 U.S. 614, 621 (1998); *McKay v. United States*, 657 F.3d 1190,

1195 (11th Cir. 2011).   An issue is "'available' on direct appeal when its

merits can be reviewed without further factual development."   *Lynn*, 365

F.3d at 1232 n.14 (quoting *Mills*, 36 F.3d at 1055).   Absent a showing that

the ground of error was unavailable on direct appeal, a court may not

consider the ground in a section 2255 motion unless the defendant

establishes (1) cause for not raising the ground on direct appeal, and (2)

actual prejudice resulting from the alleged error, that is, alternatively, that

he is "actually innocent."   *Lynn*, 365 F.3d at 1234; *Bousley*, 523 U.S. at

622 (citations omitted).   To show cause for procedural default, a defendant

must show that "some objective factor external to the defense prevented

[him] or his counsel from raising his claims on direct appeal and that this

factor cannot be fairly attributable to [defendant's] own conduct."   *Lynn*,

365 F.3d at 1235.    A meritorious claim of ineffective assistance of counsel

can constitute cause.   *See Nyhuis*, 211 F.3d at 1344.

### B. <u>Ineffective assistance of counsel</u>

Ineffective assistance of counsel claims generally are not cognizable

on direct appeal and are properly raised by a § 2255 motion regardless of

whether they could have been brought on direct appeal.   *Massaro v.*

*United States*, 538 U.S. 500, 503 (2003); *see also United States v.*

*Franklin*, 694 F.3d 1, 8 (11th Cir. 2012); *United States v. Campo*, 840 F.3d

1249, 1257 n.5 (11th Cir. 2016).   To prevail on a constitutional claim of

ineffective assistance of counsel, a defendant must demonstrate both that

counsel's performance was below an objective and reasonable

professional norm and that he was prejudiced by this inadequacy.

*Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Williams v. Taylor*, 529

U.S. 362, 390 (2000).   In applying *Strickland*, the court may dispose of an

ineffective assistance claim if a defendant fails to carry his burden on either

of the two prongs.   *Strickland*, 466 U.S. at 697; *Brown v. United States*,

720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243,

1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts are to examine counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Hammond v. Hall*, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689); *see also Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel

would have taken the action that his counsel did take."   *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315.   "[T]he fact that a particular defense ultimately proved to be unsuccessful [does not] demonstrate ineffectiveness."   *Chandler*, 218 F.3d at 1314.   When reviewing the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect."   *Chandler*, 218 F.3d at 1316 n.18.

To establish prejudice, defendant must show that, but for counsel's deficient performance, the outcome of the proceeding would have been different.   *Strickland*, 466 U.S. at 694.   "The likelihood of a different result must be substantial, not just conceivable."   *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (quoting *Strickland*).   For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him."   *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir.

2010).   A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."   *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687). Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level.   *Glover v. United States*, 531 U.S. 198, 203–04 (2001).   A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance."   *Id.* at 203.

To establish ineffective assistance, a defendant must provide factual support for her contentions regarding counsel's performance.   *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987).   Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test.   *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir. 2012) (*citing Yeck v. Goodwin*, 985 F.2d 538, 542 (11th Cir. 1993)); *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941

F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899

(11th Cir. 1990) (*citing Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

Furthermore, counsel is not constitutionally deficient for failing to preserve

or argue a meritless claim.   *Denson v. United States*, 804 F.3d 1339, 1342

(11th Cir. 2015) (citing *Freeman v. Attorney General, Florida*, 536 F.3d

1225, 1233 (11th Cir. 2008)).   This is true regardless of whether the issue

is a trial or sentencing issue.   *See, e.g.*, *Sneed v. Florida Dep't of*

*Corrections*, 496 F. App'x 20, 27 (11th Cir. 2012) (failure to preserve

meritless *Batson* claim not ineffective assistance of counsel);   *Lattimore v.*

*United States*, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not

ineffective for failing to make a meritless objection to an obstruction

enhancement); *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002)

(counsel was not ineffective for failing to raise issues clearly lacking in

merit).

Finally, the Eleventh Circuit has recognized that given the principles

and presumptions set forth above, "the cases in which habeas petitioners

can properly prevail . . . are few and far between."   *Chandler*, 218 F.3d at

1313.   This is because the test is not what the best lawyers would have

done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted.   *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000).   "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'"   *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).   The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory."   *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).   Regardless of how the standard is framed, under the prevailing case law it is abundantly clear that a moving defendant has a high hurdle to overcome to establish a violation of his constitutional rights based on his attorney's performance.   A defendant's belief that a certain course of action that counsel failed to take might have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

Case Nos.: 1:15cr9/AW/GRJ; 1:17cv119/AW/GRJ

### C. Burkett's claims for relief

On the § 2255 motion form, Burkett identifies four grounds for relief, three of which reference the attachment to her motion.   In the attachment she asserts twelve allegations of error.   The majority of her assertions, to the extent the court can discern a claim, could have been raised on direct appeal.   Any claims that could have been raised on appeal are procedurally barred.   *Lynn*, 365 F. 3d at 1234-35.   Nonetheless, to the extent the motion can be liberally construed as alleging ineffective assistance of counsel for failure to pursue each of the claims, the Court will briefly discuss discuss those claims.

### 1. Search and Seizure

Burkett first asserts that her conviction was obtained by use of evidence obtained as a result of an unconstitutional search and seizure. (ECF No. 226 at 14.)   She claims that items and information seized from her home or business was used as evidence, and that the "warrant issued without being solely based upon probable cause was an unconstitutional act."   (*Id.*)

This claim could have been raised on appeal and is procedurally barred.   *Lynn*, 365 F. 3d at 1234-35.   Liberally construed as a claim of ineffective assistance of counsel, it also fails for lack of specificity.   When counsel's alleged ineffectiveness involves a failure to competently litigate a Fourth Amendment claim, to demonstrate actual prejudice, the defendant must prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence.   *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *Green v. Nelson*, 595 F.3d 1245, 1251-52 (11th Cir. 2010). Burkett has offered no facts in support of her claim, including what evidence she believes should have been suppressed, or the legal basis for her belief that the warrant was insufficient.

In her reply, she alludes to Keith Joyce (a F.B.I. agent) "looking in contact's to retrieve a phone number that had momma attached to," presumably a reference to a search law enforcement conducted on her son/co-defendant's phone.   (ECF No. 238 at 26.)   Agent Joyce then obtained information about Burkett's phone.   Burkett obliquely references a mother's concern for her child, and that if a child (co-defendant Hal Black)

is away from home for 72 hours, she was justified in calling him until he answered.    None of these additional allegations give legitimacy to her Fourth Amendment claim, which the court finds to be unsupported.    She has not shown counsel was constitutionally ineffective.

## 2. Vigorous Defense

Burkett next contends she was denied her Sixth Amendment right to effective assistance of counsel because counsel did not mount an aggressive defense in her behalf, a claim that contains several subparts. (ECF No. 226 at 14.)    None of Burkett's allegations establish a violation of *Strickland*.

She claims that her lawyer did not "assist in asserting any of the accused's inalienable rights," without specifying precisely what counsel did not do that would have led to a different outcome in the case.    Bare, conclusory assertions do not entitle a habeas litigant to relief.    *Boyd*, 697 F. 3d at 1333-34; *Garcia*, 456 F. App'x at 807.

She next complains that counsel led her to participate in an "ex parte trial" where the court only heard evidence from the prosecution, not the defense. This assertion is not true, as her attorney called two witnesses for

the defense, Burkett's fiancé Christopher Thompson and Burkett's co-defendant and son Hal Black.   (ECF No. 150 at 125-198;   ECF No. 151 at 4-57.)   The fact that the court ultimately found their testimony was not credible does not negate the fact that they were defense witnesses.   (ECF No. 198 at 16.)

Burkett also asserts that counsel failed to obtain unidentified witnesses favorable to her without either identifying the witnesses she believes counsel should have called or the nature of their testimony.   This bald assertion does not entitle her to relief.   Through Thompson and Black's testimony, defense counsel attempted to portray her as a law-abiding citizen who did not know about, much less participate in, Black's pimping activities.   Even if she had fleshed out her allegations, a habeas petitioner bears a heavy burden when she alleges ineffective assistance of counsel in failing to call a witness because "often allegations of what a witness would have testified to are largely speculative." *Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006) (quoting *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir.1980)).   Furthermore, her allegations do not make clear whether she informed her attorney about the unidentified

witnesses.   Trial counsel cannot be faulted for failing to call witnesses whose names are not disclosed by the defendant.   *Marquard v. Secretary for Department of Corrections*, 429 F.3d 1278, 1307 (11th Cir. 2005) (citing Jones v. State, 528 So.2d 1171, 1173 (Fla.1988) and Highsmith v. State, 617 So.2d 825, 826 (Fla. 1st DCA 1993)).

Finally, she claims counsel had a conflict of interest because both the prosecutor and her attorney are members of the Bar.   This claim is frivolous.   To engage in the practice law, with few exceptions not relevant here, all attorneys must pass an examination and be admitted to the Bar in one of the fifty states or the District of Columbia.   The fact that two attorneys are members of the same bar does not prove a conflict.

### 3. <u>Wrongful Adjudication</u>

Burkett's third claim is that the judgment of conviction violates the constitution because the district court did not have "constitutional authority" to adjudicate her case.

Under 18 U.S.C. § 3231, "the district courts of the United States have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."   An indictment which charges a

defendant with violating a valid federal statute as enacted in the United States Code alleges an offense against the laws of the United States and is sufficient to invoke the district court's subject matter jurisdiction.   *See United States v. Grimon*, 923 F. 3d 1302, 1305 (11th Cir. 2019) (quoting *United States v. Brown*, 752 F. 3d 1344, 1354 (11th Cir. 2014)).   Her claim is without merit, and counsel was not derelict in not raising it.

### 4. <u>Jurisdiction/Venue</u>

Burkett asserts that her conviction was obtained "from a district court which is an inferior court and not the proper venue/ court for the parties involved."   (ECF No. 226 at 15.)   This assertion was addressed in part in the previous section.   *See* 18 U.S.C. § 3231.

Burkett's suggestion that venue was improper in the Northern District of Florida is wrong.   The Constitution guarantees defendants the right to be tried in the state and district where the crime was committed.   *United States v. Crane*, 635 F. App'x 661, 662 (11th Cir. 2015) (citing U.S. Const. art. III, § 2, cl. 3; U.S. Const. amend. VI; *see also* Fed. R. Crim. P. 18 ("Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed.")).

Thus, venue is proper where the crime occurred.    An offense committed in more than one district may be "prosecuted in any district in which such offense was begun, continued, or completed."    *Id.* (citing 18 U.S.C. § 3237(a)).    The Government is required to prove venue at trial only by a preponderance of the evidence.    *Id.* (citing *United States v. Stickle*, 454 F. 3d 1265, 1271 (11th Cir. 2006); *United States v. De La Cruz Suarez*, 601 F. 3d 1202, 1217 (11th Cir. 2010)).

The evidence at trial established that the offense conduct took place in the Northern District of Florida, Gainesville Division.    Burkett, who resided in Gainesville, Florida, transported victims and co-defendants to various locations to facilitate the victims engaging in sexual activity with clients.    Additionally, she took nude photographs of minor victim E.B. for use on the Backpage website at her home.    (*See* ECF No. 149 at 146 (Testimony of minor victim E.B.)).

In her reply, Burkett raises the issues of diversity jurisdiction and personal jurisdiction for the first time.    (ECF No. 238 at 2, 7.)    These principles, which apply to the jurisdiction of federal courts in civil cases,

have no application in a criminal case and thus afford her no relief.

Counsel was not ineffective for failing to raise them.

### 5.   <u>Waiver of Rights</u>

Burkett contends that the conviction "required the accused to 'waive' certain inalienable rights which is in direct violation of her spiritual and religious beliefs which are secures (sic) by the 1st and 9th Amendments." (ECF No. 226 at 15.)   She claims that waiving an inalienable right would be unconstitutional, but she offers no explanation of which right she purportedly waived, or how the alleged waiver affected her case.   The claim has no basis in law. There is no right to relief on this claim and counsel was not ineffective under *Strickland* for not raising this argument.

### 6.  <u>Legal Status</u>

Burkett asserts that her conviction was obtained by the "wrong legal status" and that her status should be changed from "LEGAL Person to NATURAL Person."   (ECF No. 226 at 16.)   The basis for her assertion is her belief that the status of legal person "places the accused in a negative status at law." (*Id.*)   There is no factual or legal basis for this claim, and no violation of *Strickland*'s right to effective counsel.

Case Nos.: 1:15cr9/AW/GRJ; 1:17cv119/AW/GRJ

### 7.   Taint of Grand or Petit Jury

Burkett claims that her conviction was "obtained by action of a grand jury or petit jury which was unconstitutionally selected or tainted by a third party instruction."   (ECF No. 226 at 16.)   In support of her assertion, she notes the requirement that Grand Jurors be drawn from a cross-section of the community and asserts that "information given to the Grand Jurors was contaminated and corrupt from third party individuals which was unconstitutional."   (*Id.*)   She does not make any additional reference to the petit jury.   Petitioner offers no factual support for her claims.   Absent any additional factual information, she has not established a constitutional violation, she has not demonstrated that counsel was constitutionally ineffective, and she has not established that she is entitled to relief on this claim.

### 8. Right Against Self-Incrimination

Burkett alleges that the conviction was obtained by a violation of the right against self-incrimination. (ECF No. 226 at 16.)   Considering that Burkett did not testify at trial (ECF No. 151 at 62) and there was no confession, there is no basis for this claim.

Case Nos.: 1:15cr9/AW/GRJ; 1:17cv119/AW/GRJ

### 9. <u>Corporate fiction</u>

Burkett maintains that her conviction was obtained by a corporate fiction because she is a natural person and the "accuser" (the Government) is a corporation pursuant to 28 U.S.C. § 3002.   (ECF No. 226 at 17.)   This statute provides definitions for terms used in the chapter of the United States Code governing federal debt collection procedure and has no bearing upon this case.   No relief is warranted.

### 10. <u>Supreme Law</u>

Burkett claims she is being unlawfully held in violation of the Constitution, which is the Supreme Law of the Land.   (ECF No. 226 at 17.) Again, she offers no basis for her assertion, and as such, is due no relief.

### 11. <u>Right to Habeas Corpus</u>

Burkett asserts that she has the inalienable right to the writ of habeas corpus and to deny the accused a second or successive form of Habeas Corpus is an unconstitutional act.   (ECF No. 226 at 17.)   This motion is Burkett's first motion under 28 U.S.C. § 2255.   As such, this claim has no basis in fact or in law.

## 12.   Due Process

In her final ground for relief Burkett alleges that her conviction was obtained without due process of law.   (ECF No. 226 at 17.)   She asserts, essentially, that the federal statute under which she was charged and convicted was unconstitutionally vague, and she did not understand what conduct was prohibited.

The Fifth Amendment provides that "[n]o person shall … be deprived of life, liberty, or property, without due process of law."   The Government violates this guarantee by taking away life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or is so standardless that it invites arbitrary enforcement.   *Beckles v. United States*, 137 S. Ct. 886, 892 (2017).   The Supreme Court has stated: "the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."   *Id.* (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)).

Burkett was convicted under 18 U.S.C. § 1591.   The Eleventh Circuit has previously rejected a void for vagueness challenge to this statute, finding that its language gave the defendant fair notice that his conduct was criminal.   *United States v. Mozie*, 752 F. 3d 1271, 1282-83 (11th Cir. 2014); *see also United States v. Whyte*, 928 F. 3d 1317 (11th Cir. 2019) (noting Government can prove a violation of the statute by showing a defendant had a reasonable opportunity to observe the victim, or the defendant knew or (as of 2015) recklessly disregarded the fact that the victim was under the age of 18.)   Therefore, Burkett's claim is foreclosed by binding circuit precedent and does not warrant relief.

### 13.   <u>Invalid Sentencing Guideline—(Burkett's Reply)</u>

In her reply, Burkett appears to allege that she has newly discovered evidence that an invalid sentencing guideline was applied in her case. (ECF No. 232 at 16.)   The nature and basis for her claim is unclear.   She references a prior conviction for felony child abuse, although such a conviction is not mentioned in her PSR.   She also refers to 18 U.S.C. § 3553 as being invalid.   The court can discern no basis for relief from her allegations and this claim is due to be denied.

Case Nos.: 1:15cr9/AW/GRJ; 1:17cv119/AW/GRJ

### 14.   Double Jeopardy/Dual Sovereignty--(Burkett's Reply)

Burkett appears to contend that she is not a citizen of the United States, and thus not subject to its laws, because she is a descendant of African ancestors.   (ECF No. 238 at 29.)   She argues Florida is merely her domicile.   Even if she were correct and she were not a citizen of the United States, she is still bound to obey its laws while she resides here. The claim has no legal merit.

Burkett also complains that her co-defendants were assessed only a $100 special monetary assessment while she was required to pay two assessments.   A $100 special monetary assessment accrues for each count of conviction.   Burkett was convicted at trial of two counts, while her co-defendants each pleaded guilty to a single count.   There was no error or constitutional irregularity in the court's assessment of a $200 monetary assessment.

### 15.   Illegal Conviction--(Burkett's Reply)

Burkett appears to contend that her actions were not taken in violation of the law when she did them, and she complains that she has been convicted in violation of ex post facto laws.   As noted above, Title 18

U.S.C. § 1591(c) was amended in 2015 to clarify that a person could be convicted of violating § 1591 if the person "recklessly disregarded the fact" that the victim had not attained the age of 18 years.   The statute previously required that a defendant had a reasonable opportunity to observe the victim or that the person knew the person had not attained the age of 18 years.   *See Whyte*, 928 F. 3d 1317.   This minor statutory amendment does not affect Burkett's conviction.   Burkett had the opportunity to observe E.B. when Burkett drove E.B. to her "dates," and Burkett also took at least one nude photo of E.B. to be used on the Backpage website.

### 16.   Burkett's Motion to Amend

Nearly two years after filing her original § 2255 motion, Burkett filed a pleading styled "Petitioner's Amended Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255."   (ECF No. 289.)   Burkett asserts that the claims raised in the proposed amendment relate back to her original claims.   The amendment, of course, is facially untimely under 28 U.S.C. § 2255(f).   Only if the new amended claims relate back in time to the initial petition may they be considered on their merits.   Claims of ineffective assistance of counsel in an amended motion which arose from

separate conduct and occurrences in both time and type from those alleged

in an original motion do not relate back.   *Davenport v. United States*, 217

F.3d 1341, 1346 (11th Cir. 2000).   Burkett's claims are not related to her

previous claims and, therefore, are untimely.   Nonetheless, in an

abundance of caution the court will briefly discuss them.

### a.   <u>Failure to retain an independent expert</u>

Burkett assets that her attorney was constitutionally ineffective

because he did not request funds to retain an independent mental health

expert.   She claims, without support, that mental health professionals that

"had treated her for decades" would have testified that she did not have the

mental ability to form the specific intent required to commit the offenses of

conviction.

In a sealed *ex parte* motion filed with the Court, counsel requested,

and was thereafter granted, pre-authorization for investigative expenses.

(ECF Nos. 58, 59.)   The precise nature of the investigations counsel

sought to engage in is unclear, but the attachment suggested

approximately 20 to 30 witnesses would need to be located and

interviewed.

Case Nos.: 1:15cr9/AW/GRJ; 1:17cv119/AW/GRJ

The PSR reflects that Burkett had received a check from Social

Security since the age of five, although she did not remember why she

received the check.   (ECF No. 168, PSR ¶ 102.)   Before her arrest, she

was receiving approximately $647 in monthly disability payments.   Burkett

reported receiving counseling or psychiatric treatment from four different

facilities.   The probation office requested records, and as of the date of the

PSR, one facility responded, saying it had no record of Burkett having been

a patient at their facility, and the other three had not responded.   (ECF No.

168, PSR ¶¶ 103-105, 109.)   There is no record support for her assertion

that she had been treated for decades by mental health professionals.

Furthermore, the office of the Federal Public Defender obtained a

psychological evaluation prior to trial by an individual identified as Cliff

Levin.   (ECF No. 198 at 18.)   The purpose of the evaluation was to

assess competency and Burkett's general IQ.   Defense counsel provided

the evaluation to the Court at sentencing.   The Court specifically inquired

whether counsel contended his client was incompetent and he stated that

he did not, but that he intended to use the report to support his statements

in mitigation.   (*Id.* at 19.)   The Court reviewed the report briefly and

concluded that the report was "pretty much consistent with what's in the presentence investigation report" and that it did not discuss the specifics of Burkett's IQ.   (*Id.* at 20.)

The evaluation obtained by the Office of the Federal Public Defender was not made part of the record.   Even though the evaluation is not in the record, there is nothing else in the record suggesting that an additional independent mental health expert was required in this case or that counsel was constitutionally ineffective for failing to obtain a second examination.

### b.  <u>Failure to investigate a mental health defense</u>

Burkett asserts that she has attached a small portion of her mental health records in support of her claim that counsel should have pursued a mental health defense.   There were no records attached, and she has not shown ineffective assistance of counsel.

The closing arguments were not transcribed.   However, the defense strategy can be gleaned from the record.   From the testimony of the defense witnesses, it is apparent that counsel attempted to paint a picture of his client as a law abiding individual who did not want for money, would not have tolerated illegal activity, was unaware of her son's role in

Case Nos.: 1:15cr9/AW/GRJ; 1:17cv119/AW/GRJ

prostitution, and had minimal interaction with the victim E.B.   (ECF No. 150 at 125-198; ECF No. 151 at 4-57 (testimony of Christopher Thompson and Hal Black)).   Burkett did not testify.   (ECF No. 151 at 62.)   Counsel had the benefit of the psychological evaluation obtained by the Public Defender in making his strategic decision about how to proceed at trial.   The fact that counsel's strategy was unsuccessful does not mean that his performance was constitutionally ineffective.   *Chandler*, 218 F.3d at 1314. Burkett has not shown that this choice was 'so patently unreasonable that no competent attorney would have chosen it.'"   *Dingle*, 480 F.3d at 1099. Her claim is without merit.

### c. Failure to Withdraw

Burkett asserts that counsel failed to withdraw from the case to allow new counsel to represent her on direct appeal.   She asserts that she was deprived of conflict free counsel because Burkett's court appointed trial counsel would not have pointed out his errors on appeal.   The nine errors Burkett claims could have been raised on appeal are all claims of ineffective assistance of counsel.   (ECF No. 289 at 4.)   Claims of ineffective assistance of counsel generally are not cognizable on direct

appeal.   *Massaro*, 538 U.S. at 503; *Franklin*, 694 F.3d at 8.    Thus, there

was no conflict in counsel's representation of Petitioner on direct appeal.

## III.   <u>APPOINTMENT OF COUNSEL</u>

There is no constitutional right to counsel in post-conviction

proceedings, including habeas proceedings.   *See Coleman v. Thompson*,

501 U.S. 722, 752 (1991); *Pennsylvania v. Finley*, 481 U.S. 551, 555

(1987).   In federal habeas corpus proceedings, appointment of counsel is

necessary only when due process or "the interests of justice" require it.   18

U.S.C. § 3006A(a)(2)(B); *Hooks v. Wainwright*, 775 F.2d 1433, 1438 (11th

Cir. 1985).   The procedural rules governing § 2255 cases require the

appointment of counsel in only two circumstances: (1) where the court has

authorized discovery upon a showing of good cause, and appointment of

counsel is "necessary for effective discovery," and (2) where the court has

determined that an evidentiary hearing is warranted.   Rules Governing

Section 2255 Cases 6(a), 8(c).   Neither due process nor the interests of

justice require the appointment of counsel in this case.

Case Nos.: 1:15cr9/AW/GRJ; 1:17cv119/AW/GRJ

## IV.   <u>CONCLUSION</u>

An evidentiary hearing is not necessary for the Court to resolve Burkett's claims because "the motion and files and records conclusively show that the prisoner is entitled to no relief."   *See* 28 U.S.C. § 2255(b); *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015).   For the foregoing reasons, the Court concludes that Burkett has failed to show that any of the claims raised in her motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255, raised in her reply, or raised in the proposed amendment have merit.   Therefore, Petitioner's motion should be denied in its entirety.

## V.   **CERTIFICATE OF APPEALABILITY**

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.   Rule 11(b), § 2255 Rules.

Case Nos.: 1:15cr9/AW/GRJ; 1:17cv119/AW/GRJ

After review of the record, the court finds no substantial showing of the denial of a constitutional right.   § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted).   Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED:**

1. Burkett's Motion for leave to file an Amended Motion to Vacate, Set Aside or Correct Sentence (ECF No. 289) is **GRANTED** to the extent the court has considered the claims raised in the amended motion.

2. Burkett's Motion for Appointment of Counsel and for an Evidentiary Hearing (ECF No. 291) is **DENIED**.

3. Burkett's Motion to Seal her proposed Amended Motion to Vacate (ECF No. 292) is **DENIED**.   The reason given for the sealing of the motion—

the inclusion of mental health records—is not valid as no such records were attached.

And based on the foregoing, it is respectfully **RECOMMENDED** that:

1.      The "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (ECF No. 226), as amended by (ECF No. 289) should be **DENIED**.

2.      A certificate of appealability should be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this 23rd day of August, 2019.



*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge



**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.

Case Nos.: 1:15cr9/AW/GRJ; 1:17cv119/AW/GRJ